STEVEN J. SIBLEY (SBN 152365)
JOHN DINAPOLI (SBN 84365)
DINAPOLI & SIBLEY
Ten Almaden Boulevard, Suite 1250
San Jose, CA 95113-2271
Telephone:  (408) 999-0900
Facsimile:    (408) 999-0191
e-mail:         sjs@ dslaw.net

Counsel to KURT MILLER, Movant.

THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>GLORIA CABRAL,<br><br>Debtor. | Case No. 18-51575 MEH<br><br>Chapter 13<br><br>**AMENDED MOTION TO TERMINATE, ANNUL AND FOR IN REM RELIEF FROM THE BANKRUPTCY AUTOMATIC STAY** (Waiver of FRBP 4001(a)(3))<br><br>**[Property: 3474 Gila Drive, San Jose, California 95148]**<br><br>Hearing<br>Date:    October 5, 2018<br>Time:   10:00 a.m.<br>Place:   Courtroom 3020<br>            Federal Courthouse-San Jose<br>            280 South First Street<br>Judge: M. Elaine Hammond |

COMES NOW, KURT MILLER (Movant or Lender) with this Amended Motion for Relief from the bankruptcy automatic stay. Movant's motion requests that the Court order that the Bankruptcy automatic stay of 11 USC §362 be vacated and annulled as of July 18, 2018 (the bankruptcy petition filing date) and that any subsequent bankruptcy filing would not impose the automatic stay for two (2) years

against the affected property, 3474 Gila Drive, San Jose, California 95148 ("Property") pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2) and (d)(4).

This case is part of a scheme by the debtor and her family to hinder, delay and affect Movant's secured claim against the Property. The debtor does not reside in the Property and lacks any equity in it. The debtor's fractional 1/10 Property interest is fraudulent and not necessary to this latest attempt by the debtor and her family to use the bankruptcy court and the Recorder's office to prevent Movant's lawful collection of his claim.

This Motion is based on the concurrently-filed Request for Judicial Notice, Declaration of Kurt Miller, Declaration of appraiser Gary Kunasek, the Memorandum of Points and Authorities and such other arguments and authorities presented at the hearing on this Motion. This Motion was amended to add BANK OF NEW YORK (BNY). BNY claims to be the successor beneficiary to the first deed of trust against the Property, succeeding BANK OF AMERICA.

KURT MILLER was the holder of a note in the original amount of $100,000 secured by a second deed of trust against a single-family house commonly known as 3474 Gila Drive, San Jose, California (the Property). The present title holders are Daniel Acre, holding a 9/10th interest, and the debtor, who holds a 1/10th interest. The debtor claims to have obtained her 1/10 Property interest for nothing from Mr. Acre the day she filed her most-recent bankruptcy case on July 18th. Mr. Acre did not pay anything for his Property interest either. See below.

The debtor's latest filing is part of a long history of plaintiff's, her family members and others' deliberate abuse and fraud upon creditors, governments and the legal system. Plaintiff has attempted to collect on the debtor's past-due secured

claim against the Property for over eight (8) years and even longer if we consider the few payments made after the Note was originally signed in September 2007.

During the past six (6) years, plaintiff, her children and others, including Daniel Acre, a present or former daughter's boyfriend have transferred ownership of the Property amongst themselves six (6) times for no consideration. In the last six (6) years, plaintiff, her children and Mr. Acre filed eight (8) bankruptcy cases. Three (3) of those bankruptcy cases and two (3) Property interest transfers have been filed or recorded in the last six (6) months.

Plaintiff borrowed $100,000 from defendant KURT MILLER on or about September 1, 2007, with interest of 12% per year, made payments of only $17,500 on the Note and has not made any payments on the Note since November 1, 2009. The debtor does not reside at the Property, has admitted she owes the money and further admits there is no equity in the Property.

The Property transfers and bankruptcy filings were part of a scheme and timed by the debtor and her allies to interrupt, postpone or create false claims against Mr. Miller and to prevent him from collecting on his claim.

The plaintiff's and others' illegal transfers and serial bankruptcy filings were made, intended to interfere with and have repeatedly delayed Mr. Miller's foreclosure and unlawful detainer actions. These actions constitute cause for relief from stay.

In addition, the debtor has no equity in the Property and the 1/10 Property interest is not necessary for the debtor's reorganization.

The Court should grant Mr. Miller's Amended Motion for Relief from the Automatic Stay by terminating and annulling the stay as of the July 18, 2018 petition filing date and for in rem relief, precluding the Property from being part of any

bankruptcy proceeding for two (2) years.

The following narrative references Exhibits and statements by Moving party.

The Exhibits are admissible based on the Request for Judicial Notice (RJN) and the Declaration of Kurt Miller, both filed concurrently.

## FACTS

1. On 3/25/2006 the Debtor Gloria Cabral, a.k.a Gloria Robles, as an unmarried woman purchased the Property from Maricela Cuevas-Valencia. The grant deed is attached as Exhibit 1 and was recorded on 3/30/2006.  RJN.

2. On 3/27/2006 the Debtor granted a [first] deed of trust to Countrywide Home Loans, Inc.  That trust deed is attached as Exhibit 2 and was recorded on 3/30/2006. This deed of trust was subsequently conveyed to Bank of America and then to the existing beneficiary, the Bank of New York (BNY).  RJN.

3. In 9/2007, the debtor and her daughters Gloria Castaneda Cabral, aka Gloria C. Cabral, aka Gloria Castaneda, Ann Castaneda and Blanca Castaneda met with Movant Mr. Miller to discuss a loan.  At that time, Mr. Miller was an investor in real estate secured loans.  Ms. Cabral, the debtor, requested a loan of $100,000 from Mr. Miller to be secured by a second deed of trust against the Property.  Ms. Cabral and her daughters told Mr. Miller that the funds would be used by the family to operate a jewelry store in San Jose, California.  The debtor also informed Mr. Miller that she owned free and clear a large house in Guadalajara, Mexico worth several hundred thousand dollars.  Miller Declaration.

4. On 9/1/2007 Gloria Cabral, the debtor, as maker executed and delivered a promissory note for $100,000 in favor of Kurt Miller.  (The signature lines for the note incorrectly identified Rong Tu as the payee).  The promissory note is attached as

Exhibit 3 and was signed by the debtor on 9/1/2007. RJN.

5. On 9/1/2007 The debtor Gloria Cabral aka Gloria Cabral Robles, granted and signed a deed of trust to Rong Tu as beneficiary. At the time, Ms. Tu was the trustee of the KAM Living Trust. The Cabral note (and second deed of trust) were assets of the KAM Trust. Ms. Tu and Mr. Miller were living together at that time and subsequently became married. This deed of trust, attached as Exhibit 4, was recorded on 11/2/2007. RJN. This deed of trust was subsequently conveyed to Mr. Miller as part of the couple's divorce proceeding. Miller Declaration..

6. On 1/1/2008, Mr. Miller did not receive the monthly payment for the Cabral Note. When he contacted the debtor, Ms. Cabral said that the jewelry business was slow, but that she would sell or refinance either the Property or the Guadalajara, Mexico property to pay the Cabral note. Despite her assurances, the debtor made only two other payments; one for $3,500 on September 1, 2008 and $3,500 on November 1, 2009. Miller Declaration.

7. On 4/21/2008 the beneficiary Rong Tu signed a substitution of trustee naming Jeffery Mentzos as Trustee of the Cabral Deed of Trust (Exhibit 4). RJN. This substitution supplemented the original deed of trust which had not named a trustee. This substitution is attached as Exhibit 5 and was recorded on 5/13/2008. Miller Declaration.

8. On 8/6/2009 the debtor authorized her daughter Gloria Castaneda to discuss a loan modification with Bank of America, whose loan was then secured by a first deed of trust against the Property (replacing Countrywide). A copy of the Special Power of Attorney from the debtor to Ms. Castaneda is attached as Exhibit 6 and was recorded on 9/21/2009. RJN.

9. On 9/21/2009, the debtor's daughter Gloria Castaneda executed a Grant Deed conveying her mother (the debtor's) interest in the Property to herself. A copy of the recorded grant deed from 9/21/2009 is attached as Exhibit 7. RJN. The only listed witness for this debtor-to-daughter conveyance was Daniel Arce. Mr. Acre is or was Gloria Castaneda's boyfriend. Miller Declaration. No documentary transfer tax was paid on the transfer. The transfer was made to stop or delay without justification Bank of America's collection actions against the Property, which is also evident by the debtor's loan modification efforts. See Exhibit 6.

10. Mr. Miller repeatedly contacted the debtor and her daughters from 11/1/2009 through 6/2013 to discuss the Cabral note and to obtain payments. On each and every occasion, the debtor and her daughters told Mr. Miller that the jewelry business would recover from the recent recession, that the first loan to Bank of America was current and that the debtor would sell or refinance one of her properties to pay off or cure the Cabral Note. Mr. Miller did not receive any payments on the Note after 11/9/2009. Miller Declaration.

11. On 9/19/2011 Bank of America caused to be recorded a Notice of Default against the debtor regarding the Bank's first deed of trust loan. The notice shows the debtor behind in note payments totaling $112,461.50 as of September 17, 2011. A copy of the Bank of America Notice of Default is attached as Exhibit 8. RJN.

12. On 12/21/2011 Bank of America recorded a Notice of Trustee's Sale for its first deed of trust securing the loan owed by the debtor. The trustee sale was scheduled for 1/13/2012. A copy of the trustee's sale notice is attached as Exhibit 9. RJN.

13. On 1/10/ 2012, three days before the Bank's trustee sale, the debtor filed

a Chapter 13 bankruptcy petition, assigned Case No. 12-50162. The filing was in pro per and stopped the scheduled Bank of America trustee sale. Case information is attached as Exhibit 10. RJN. The Bankruptcy Court dismissed the debtor's case on 1/25/2012 for failure to file schedules and other information. RJN Exhibit 10.

14. On 11/27/2012 Bank of America issued another Notice of Trustee Sale after the debtor's bankruptcy case (Exhibit 10) was dismissed. The sale was rescheduled for 12/19/2012. The second trustee sale notice is attached as Exhibit 11. RJN.

15. On 12/17/2012 the debtor filed another Chapter 13 bankruptcy petition two days before the rescheduled Bank of America trustee sale date. That bankruptcy filing was assigned Case No. 12-58876. The filing stopped the rescheduled Bank of America trustee sale. The Bankruptcy Court dismissed the debtor's case on January 22, 2012 due to her failure to file schedules and other information. Case information is attached as Exhibit 12. RJN.

16. On 5/29/2013 Bank of America issued another Notice of Trustee Sale after Ms. Castaneda's second chapter 13 bankruptcy case (Exhibit 12) was dismissed. The trustee sale was rescheduled for 6/19/2013. This third trustee sale notice is attached as Exhibit 13. RJN.

17. On 6/21/2013, Mr. Miller met with the debtor and her daughters Ann and Blanca Castenada to discuss the loan. Gloria Castenada was not present at this meeting. Miller Declaration.

18. Prior to the June 21st meeting, Mr. Miller obtained a Trustee Sale Guarantee (TSG). After reviewing the TSG, Mr. Miller became aware that the debtor was behind on her modified loan payments to Bank of America and that the debtor's

daughter Ms. Castaneda had transferred the Property to herself without Mr. Miller's consent. The debtor had previously assured Mr. Miller that the B of A loan was current. At this meeting, the debtor admitted that she would not sell either the Property or the Guadalajara, Mexico property to pay Mr. Miller. Neither the debtor or her daughters told Mr. Miller about the transfer of the debtor's Property interest to her daughter Ms. Castenada (Exhibit 8). Mr. Miller told the debtor and his daughters that he was misled by them about the loan. Mr. Miller informed Ms. Rong Tu of the meeting. Miller Declaration.

19. On 1/14/2014 Bank of America and the debtor entered into a Loan Modification Agreement. The loan balance increased to $630,915.78. A copy of that agreement was recorded on January 14, 2014 and is attached as Exhibit 14. The first loan and deed of trust were subsequently acquired by Bank of New York (BNY). The debtor has failed to keep the first deed of trust claim current, based on the Bank of New York's objections to the debtor's proposed chapter 13 plan (See Doc#34, filed 09/04/18.) See also the Miller Declaration.

20. On 1/22/2014 the debtor's daughter Gloria Castaneda filed a chapter 7 case assigned Case No. 14-50225. Ms. Castaneda was in a relationship with a Daniel Acre. Ms. Castaneda's case was subsequently dismissed and closed by the Court on April 28, 2014 for failure to file schedules and other information. Case information is attached as Exhibit 15. RJN.

21. On 8/11/2014 Gloria Castaneda filed another Chapter 7 Bankruptcy petition, assigned Case No. 14-53372. This case was dismissed on December 29, 2014 for failure to file schedules and other information. Case information is attached as Exhibit 16. RJN.

22. On 8/11/2014 Ms. Castenada's sister Gloria Cabral Robles aka Gloria C. Robles filed a Chapter 13 bankruptcy in the Northern District of California, assigned Case No. 14-53373. The case was subsequently dismissed on December 4, 2014. Case information is attached as Exhibit 17. RJN. The daughter's name Gloria Cabral Robles resembles the name of her mother Gloria Cabral. This and the other Cabral family bankruptcies were filed to stop or delay Mr. Miller's efforts to collect the past-due debt. Miller Declaration.

23. On 11/13/2014 Kurt Miller filed a motion for relief from the automatic stay in Gloria Castaneda's chapter 7 case (14-53372 – Exhibit 16 to RJN). At that time, Ms. Castaneda was still the Property owner of record. The matter was assigned Adv. Pro. 14-05125. Mr. Miller's stay motion requested relief from the automatic stay to continue the foreclosure proceeding against the Property for the unpaid Cabral note. The RFS cover sheet and pleadings are attached as Exhibit 18. RJN.

24. On 12/2/2014 and in response to Mr. Miller's relief from stay motion, the debtor's daughter Gloria Castaneda, while her chapter 7 case was pending, executed and recorded a grant deed conveying the Property to herself and Daniel Arce. Mr. Arce was erroneously identified on the deed as a single [sic] woman. Ms. Castaneda did not notify the bankruptcy court or her trustee of this transfer. The grant deed was recorded on 12/2/2014. No documentary transfer tax was paid on this transfer. A copy of this grant deed is attached as Exhibit 19. RJN.

25. On 12/16/2014, the Bankruptcy court in San Jose, (Johnson, J.) issued an order granting Mr. Miller's motion for relief from stay in Gloria Castaneda's bankruptcy case. The Order authorized the non-judicial foreclosure of the Property. A copy of that Order is attached as Exhibit 20. RJN.

26. On 12/19/2014 and following the relief from stay order, the substituted trustee issued and recorded a Notice of Default and Election to sell under deed of trust for the Cabral note. That Notice of Default is attached as Exhibit 21. RJN.

27. On 1/29/2015 and in response to the NOD (Exhibit 21), Gloria Castaneda and Daniel Arce executed and recorded another grant deed conveying the Property to Daniel Arce, a single man. This grant deed stated that the Property was "realty not sold." Ms. Castaneda did not notify the bankruptcy court or her trustee of the transfer. The recording of this deed was intended to delay Mr. Miller's foreclosure actions against the Property. A copy of this grant deed is attached as Exhibit 22. RJN.

28. On 12/29/2014, Mr. Miller obtained a fraud in the inducement judgment against the debtor and her co-defendant daughters in the Los Angeles County Superior Court. See RJN Exhibit 22a. An abstract of that judgment was recorded against the Property. Miller Declaration.

29. On January 31, 2018, Daniel Arce executed a Grant Deed conveying the Property to Gloria C. Cabral, the debtor. A copy of this recorded grant deed is attached as Exhibit 23. RJN.

30. Less than a month later, on 2/23/2018 the debtor Gloria C. Cabral executed a Grant Deed conveying the Property to Daniel Arce. This grant deed was not recorded until 6/26/2018. A copy of this grant deed is attached as Exhibit 24. RJN.

31. On 5/29/2018 Daniel Arce filed a chapter 7 bankruptcy proceeding in the N.D. California, assigned Case No. 18-51217. In that filing, Mr. Arce gave his address as 1969 Supreme Drive, San Jose, CA. 3474 Gila Drive (the Property) was

not disclosed. Mr. Acre filed the petition by himself and requested that he not have to pay the filing fee. Case information is attached as Exhibit 25. RJN.

32. On 5/30/2018 and while his chapter 7 case was pending, Daniel Arce filed a chapter 13 case, assigned Case No. 18-51221. As with his chapter 7 case, Mr. Acre gave his address as 1969 Supreme Drive, San Jose, CA. 3474 Gila Drive (the Property) was not disclosed. For this latest case, Mr. Acre's lawyer was Lawrence P. Ramirez, of the Litigation Law Group. Mr. Ramirez and his firm, which includes Mr. Linda Keny, are simultaneously representing debtor, Gloria Cabral, in this pending bankruptcy case. Case information is attached as Exhibit 25. RJN.

33. On 6/18/2018, a Notice of Trustee's Sale arising from the Cabral Note was issued and recorded, after being authorized by Rong Tu. The trustee sale date was 7/18/2018. A copy of the Notice of Trustee Sale is attached as RJN Exhibit 26. Miller Declaration.

34. On 6/26/2018, the Grant Deed conveying the Property from the debtor Gloria C. Cabral to Daniel Arce was finally recorded. (See Exhibit 24 above). No documentary transfer tax was paid. Though Cabral and Arce had no legal or family connections, the deed falsely claimed that no documentary transfer tax was due as a transfer between a husband and wife. Mr. Acre did not notify the bankruptcy court or his trustee of the transfer. The filing of this deed was intended to delay Mr. Miller's foreclosure actions against the Property by switching the legal owner. Miller Declaration.

35. On 6/29/2018 Mr. Acre's chapter 7 case (Case No. 18-51217) was dismissed for failure to pay the filing fee. See the case docket list at Exhibit 25.

36. On 7/18/2018 Daniel Arce allegedly executed a Grant Deed conveying a

1/10 interest in the Property to the debtor Gloria Cabral Robles, a.k.a Gloria Cabral. The grant deed stated in part that "Documentary Transfer Tax is zero because total debt exceed value of property." A unsigned, unnotarized, undated, and unrecorded copy of this grant deed is attached as Exhibit 27. RJN.

37. On that same day (7/18/2018), the Litigation Law Group filed a chapter 13 bankruptcy petition for Gloria Cabral Robles, aka Gloria Cabral. The case was assigned Case No. 18-51575. A skeletal petition was filed. Ms. Cabral stated that her only creditors were Miller, Mentzos and Ms. Tu, all allegedly involved in the Cabral Note and resulting foreclosure. Case information is attached as Exhibit 28. RJN. Miller Declaration.

38. Both the transfer of the 1/10th interest to her and this latest Cabral bankruptcy filing were meant to stop the pending trustee sale. Ms. Cabral wanted the bankruptcy automatic stay to stop the sale and to fabricate foreclosure damage claims against Mr. Miller based on the filings and transfers.

39. On 7/18/2018, the Trustee's Sale was conducted, foreclosing on the second deed of trust secured by the unpaid Cabral note. Mr. Miller was the successful and only bidder, credit bidding a portion of the sums due on the Note and Deed of Trust. Mr. Acre was at the sale and showed Mr. Miller what appeared to be a grant deed to the debtor of a 1/10 interest in the Property. Mr. Acre's grant deed document was not notarized, signed or recorded and appeared to be an unfiled and unreliable document. A copy of the original trustee's deed dated July 24, 2018 and the corrected trustee's deed upon sale, recorded the next day (July 25, 2018) are attached as RJN Exhibit 29. Miller Declaration.

40. On 7/31/2018, Mr. Miller, as the Property owner, filed an unlawful detainer

action in Santa Clara County Superior Court against Ms. Cabral, Mr. Acre and Ms. Castaneda. A copy of the unlawful detainer summons and complaint assigned Case No. 18CV332335 are attached as Exhibit 30. RJN. The eviction action has been stayed.

41. On July 30, 2018, the Litigation Law Group on behalf of the debtor filed an adversary proceeding against the same named defendants for violation of the bankruptcy automatic stay. A copy of the complaint and [corrected] summons are attached as Exhibit 31. RJN. To date, none of the defendants have been served with that adversary proceeding lawsuit, as shown in defendants' motion to dismiss the adversary proceeding – RJN Exhibit 31a.

42. On 7/31/2018, the Litigation Law Group on behalf of Ms. Cabral, the debtor herein, filed an action in the Santa Clara County Superior Court against Mr. Miller, Mr. Mentzos, Jeanne Miller, Iva Miller and Zdenka Kolarik to invalidate the trustee's sale and obtain injunctive relief. A copy of the complaint assigned Case No. 18CV332400 is attached as Exhibit 32.

43. To date, none of the named defendants have been served with the summons and complaint in that state court case. To date, The Santa Clara Superior Court has not issued a preliminary or other injunction in that case and took plaintiff's injunction motion off-calendar due to plaintiff's service issues. See Exhibit 33 to RJN. At the hearing on September 13, 2018, the Court also denied the Motion for Preliminary Injunction without prejudice and rejected Ms. Keny's renewed arguments re service of the Summons and Complaint.

44. Named defendants have filed an amended motion to quash service of the state court summons and complaint, set for January 9, 2019. See

Exhibit 34 to RJN and Miller Declaration.

45. Named defendants, including Mr. Miller have also filed a motion to dismiss the adversary proceeding complaint, scheduled for 11:00 a.m. September 25, 2018.

46. The Property's fair market value is $980,000 based on certified appraiser Gary Kunasek's report, which is attached to his declaration, filed concurrently.

47. The debtor does not live at the Property.  Movant, based on his communications with the debtor, her daughters and Mr. Arce, states that the debtor lives in Mexico and upon coming to the United States does not reside on the Property, but instead resides at her daughter Blanca's house at 3454 Tokay Way in San Jose, California.  The Tokay Way address was the address for service of process on her in the Los Angeles case, at all times by Mr. Miller and his attorneys, as well as the Los Angeles Superior Court. Her schedules filed in this case do not include the dates she resided at the Property.  The debtor claims her 10% Property interest is worth $709,033.  However, the grant deed to the debtor from Daniel Acre claimed the Property was worth less than the debts against it, RJN Exhibit 27.  The debtor's Mexico property is not listed.  She doesn't describe the source of claimed rental income.  Exhibit 35 to RJN.    See Miller Declaration.

48. As of July 17, 2018, the balance owed on the Cabral Note was $244,023, including late charges of $22,225 and attorney's fees and costs of $6,217.11.  The debtor has not made any post-petition payments and did not make any note payments since November 9, 2009.  Note Interest is 12% per annum.  Miller Declaration.

49. The eight (8) bankruptcy filings by the debtor Gloria Cabral Robles (who filed three of the cases), her family and others were part of a scheme, the object of

which was to delay, hinder or defraud creditors, including Mr. Miller. This scheme also involved six (6) transfers of fractional or whole interests in the Property without the Bank's or Mr. Miller's knowledge or consent. The bankruptcy automatic stay should be terminated for cause and annulled to July 18, 2018 due to debtor's participation in this scheme.

50. The debtor does not have a valid Property interest, since the debtor's 1/10 share was obtained for no consideration on the petition filing date. Mr. Miller's actions were performed with the knowledge and consent of the beneficiary.

51. The debtor does not have any equity in the Property. The $1/10^{th}$ Property grant deed confirms it. Therefore, the debtor's $1/10^{th}$ Property interest is negative and not necessary to the debtor's reorganization efforts.

The attached Memorandum of Points and Authorities is also submitted in further support of this Motion.

WHEREFORE, it is requested that:

1. The bankruptcy automatic stay of 11 U.S.C. §362 be terminated for cause and annulled as of July 18, 2018;

2. That the bankruptcy automatic stay of 11 U.S.C. §362 not apply to this Property for two years from the date of entry of this order;

3. That the relief from stay order not be subject to the 14-day stay of Fed. R. Bank. P. 4001(a)(3); and

For such other and further relief as is just and proper.

Dated: September 20, 2018        /s/ Steven J. Sibley

STEVEN J. SIBLEY
Counsel for Moving Party
KURT MILLER